IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANDREW A. HERZOG, | ) | 8:10CV313 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DOCTOR STEPHEN O'NIEL, | ) | |
| | ) | |
| Defendant. | ) | |

    This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 89.) Also pending are Plaintiff's Objection to Defendant's Motion for Summary Judgment (filing no. 96), Motion for Investigation (filing no. 105) and Motion for Summary Judgment (filing no. 107). As set forth below, Defendant's Motion is granted and Plaintiff's Motions are denied.

## I.   BACKGROUND

    Plaintiff filed a Complaint in Case Number 8:10CV313 on August 24, 2010, against Stephen O'Niel ("O'Neill").[1] (Filing No. 1.) Plaintiff subsequently filed an Amended Complaint against O'Neill in which he alleged that O'Neill violated his First Amendment rights by ordering his staff to inspect incoming legal mail. (Filing No. 22 at CM/ECF pp. 1-2.) On October 8, 2010, Plaintiff filed a separate complaint in Case Number 8:10CV381 against O'Neill and six other individuals. (Case No. 8:10CV381, Filing No. 1.) In the separate complaint, Plaintiff noted that he had already begun a lawsuit in Case Number 8:10CV313 dealing with the same facts. (*Id*. at CM/ECF pp. 2-3.)

---

    [1]Defendant has informed the court that the spelling of his name is "O'Neill." (Filing No. 59 at CM/ECF p. 1.) The court will refer to Defendant by his correctly spelled name.

On January 26, 2011, the court directed Plaintiff to file an amended complaint in Case Number 8:10CV313 that contained all of his claims, including those presented in Case Number 8:10CV381. (Filing No. 47; Case No. 8:10CV381, Filing No. 15.) On January 28, 2011, Plaintiff filed a Motion to Amend Complaint in Case Number 8:10CV313. (Filing No. 49.) Because this Motion complied with the court's January 26, 2011, Memorandum and Order, the court consolidated Case Numbers 8:10CV313 and 8:10CV381 and conducted an initial review of Plaintiff's Amended Complaint. (Filing No. 57.) On initial review, the court dismissed all of Plaintiff's claims except for his claim that O'Neill violated his First Amendment rights by authorizing NRC staff to open, inspect and read his incoming legal mail. (Filing No. 57 at CM/ECF pp. 8-10; *see also* Filing No. 49 at CM/ECF p. 2; Case Number 8:10CV381, Filing No. 1 at CM/ECF p. 5.) The court permitted this claim to proceed against O'Neill in his individual capacity only. (Filing No. 57 at CM/ECF pp. 8-10.)

On November 29, 2011, O'Neill filed a Motion for Summary Judgment Based on Qualified Immunity along with a Brief and an Index of Evidence in Support. (Filing Nos. 89, 90 and 91.) On November 30, 2011, O'Neill filed an amended Brief in Support of his Motion for Summary Judgment. (Filing No. 92.) In response, Plaintiff filed an Objection to the Motion for Summary Judgment along with a Brief in Support of his Objection. (Filing Nos. 96 and 97.) Thereafter, O'Neill filed a Reply Brief. (Filing No. 100.)

Out of an abundance of caution, and because the Plaintiff failed to submit any evidence in response to O'Neill's Motion for Summary Judgment, the court gave Plaintiff an additional opportunity to respond. (Filing No. 104.) In doing so, the court directed Plaintiff to submit an affidavit or other evidence showing that O'Neill ordered NRC staff to read his legal mail. (*Id*.) In response, Plaintiff filed a Motion for Summary Judgment and a Brief in Support of his Motion. (Filing Nos. 107 and 108.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is

no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

O'Neill submitted a statement of material facts in accordance with the court's Local Rules. Further, O'Neill submitted evidence which was properly authenticated by affidavit or sworn deposition testimony. Plaintiff did not submit any evidence in opposition to Defendant's Motion, even after the court gave him an additional opportunity to do so. (*See* Filing Nos. 96, 97, 104, 107 and 108.) In light of this, O'Neill's Motion is deemed fully submitted and the court adopts the following undisputed material facts.

## II.   RELEVANT UNDISPUTED FACTS

1.   Plaintiff Andrew A. Herzog is a patient confined at the NRC. (*See* Docket Sheet, Filing No. 1.)

2.   Defendant Stephen O'Neill is a licensed physician and board-certified psychiatrist employed by the NRC. (Filing No. 91-2 at CM/ECF pp. 1-2.)

3.   On June 17, 2005, O'Neill issued a physician's order directing NRC staff to "[s]creen all [Plaintiff's] incoming mail except from advocacy + attorney." (Filing No. 1 at CM/ECF p. 8.)

4. Plaintiff testified that he filed grievances in 2008 because an NRC staff member opened and read his legal mail. Plaintiff testified that O'Neill resolved this issue "with administration" and he was "satisfied" with the response. (Filing No. 91-1 at CM/ECF pp. 9-13.)

5. O'Neill submitted an affidavit stating that he never ordered "the illegal opening, confiscation or reading" of Plaintiff's mail "from his attorney." (Filing No. 91-2 at CM/ECF p. 2.)

### III. ANALYSIS

#### A. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

4

**B.	O'Neill's Motion for Summary Judgment**

O'Neill argues that he is entitled to qualified immunity because Plaintiff cannot show that O'Neill violated his First Amendment rights. (Filing No. 92 at CM/ECF pp. 8-14.)

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether an official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). A court "may consider these factors in either order." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011). With these factors in mind, the court now turns to Plaintiff's claims.

5

Plaintiff alleges O'Neill authorized NRC staff to open, inspect and read his incoming legal mail. (Filing No. 57 at CM/ECF pp. 8-10; *see also* Filing No. 49 at CM/ECF p. 2; Case Number 8:10CV381, Filing No. 1 at CM/ECF p. 5.) Although involuntarily committed individuals do not forfeit their First Amendment right to receive incoming mail, that right may be limited by institutional regulations that are reasonably related to a legitimate penological or institutional interest. *Turner v. Safley*, 482 U.S. 78 (1987). Indeed, "[t]he governmental interests in running a state mental hospital are similar in material aspects to that of running a prison. Administrators have a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety." *Morgan v. Rabun*, 128 F.3d 694, 697 (8th Cir. 1997); *see also Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (although involuntarily committed patient of state hospital is not prisoner per se, his confinement is subject to same safety and security concerns as that of prisoner). The Supreme Court has held that prison officials may inspect, but not read, mail from an attorney in the presence of an inmate. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974); *Beese v. Liebe*, 51 Fed. App'x 979, 981 (7th Cir. 2002) (concluding that prison officials may inspect, but not read, a prisoner's legal mail).

Here, the undisputed facts show that O'Neill issued a physician's order directing NRC staff to "[s]creen all [Plaintiff's] incoming mail *except from* advocacy + attorney." (Filing No. 1 at CM/ECF p. 8 (emphasis added).) O'Neill has also submitted an affidavit stating that he never ordered "the illegal opening, confiscation or reading" of Plaintiff's mail "from his attorney." (Filing No. 91-2 at CM/ECF p. 2.) In contrast, Plaintiff has not submitted any evidence to support his allegations. He did not file copies of the mail that the NRC staff allegedly read, and he failed to show that the mail in question was sent from his attorney or otherwise labeled as legal mail. (*See* Filing Nos. 104, 107 and 108.) *See, e.g., Merriweather v. Zamora*, 569 F.3d 307, 312 (6th Cir. 2009) (stating, where plaintiff claimed that prison mailroom employees read his legal mail, the court must first determine whether the contested pieces of mail qualified as properly labeled legal mail). Plaintiff also testified that he was "satisfied" with O'Neill's response to his grievances alleging that NRC staff opened and read his mail. (Filing No. 91-1 at CM/ECF pp. 9-13.) This testimony

6

does not show that O'Neill failed to act, or acted unreasonably, in response to Plaintiff's grievances.

In his Motion for Summary Judgment, Plaintiff asks the court to allow him to depose his former attorney Joel B. Jay ("Jay"), because Jay allegedly had difficulties contacting Plaintiff at NRC. (*See* Filing No. 107 at CM/ECF pp. 1-2.) However, Plaintiff does not describe how these difficulties relate to whether NRC staff read his legal mail. Liberally construed, these difficulties relate to Plaintiff's access to court claim, which the court previously dismissed on April 13, 2011. (*See* Filing No. 57.)

In short, Plaintiff failed to come forward with evidence to dispute O'Neill's affidavit or refute O'Neill's physician's order directing NRC staff to screen Plaintiff's incoming mail "*except from* advocacy + attorney." (Filing No. 1 at CM/ECF p. 8 (emphasis added); Filing No. 91-2 at CM/ECF p. 2.) Indeed, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)) (internal quotation marks omitted). Because Plaintiff failed to show that O'Neill violated his First Amendment rights, O'Neill is entitled to qualified immunity and the court will dismiss Plaintiff's First Amendment claims against O'Neill with prejudice.[2]

IT IS THEREFORE ORDERED that:

1. O'Neill's Motion for Summary Judgment (filing no. 89) is granted and Plaintiff's First Amendment claims against O'Neill are dismissed with prejudice.

---

[2]Because the court finds that Plaintiff failed to show that O'Neill violated his First Amendment rights, the court need not address the second question in the qualified immunity analysis.

      2.     Plaintiff's Objection to Defendant's Motion for Summary Judgment (filing no. 96), Motion for Investigation (filing no. 105) and Motion for Summary Judgment (filing no. 107) are denied.

      3.     A separate judgment will be entered in accordance with this Memorandum and Order.

      DATED this 9th day of April, 2012.

                              BY THE COURT:

                                s/ Joseph F. Bataillon
                                United States District Judge

---

      *This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.